UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

NAFEESA BURROUGHS                                    Case No. 04-17244-MAM-13

Debtor

**ORDER RE CONFIRMATION OF DEBTOR'S
CHAPTER 13 PLAN**

Steven Murray, Attorney for the Debtor, Mobile, AL
Franklin V. Anderson, Attorney for Eight Mile Auto Sales, Inc., Mobile, AL

This case is before the Court for the confirmation of the debtor's chapter 13 plan. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § § 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is denying confirmation of the plan unless the debtor includes certain provisions indicated below.

FACTS

NaFeesa Burroughs filed her chapter 13 case on December 20, 2004. She proposed a chapter 13 plan to deal with her debts. One creditor, Eight Mile Auto Sales, Inc., objected to the plan. The plan valued Eight Mile's secured claim at $6000 and proposed to pay the debt at 8% interest until paid. At trial, the debtor agreed to raise the value to be paid to Eight Mile to $6287.50 and agreed to pay 8.25% interest. The payments on the vehicle will be about $150 per month.[1]

Ms. Burroughs does not dispute that Eight Mile has a valid first lien on her 2000 Mazda 626 automobile which she purchased from Eight Mile on March 23, 2004. Ms. Burrroughs made a

---

[1] The exact amount of the payment will be calculated by the Chapter 13 Trustee after this decision is entered.

1

$2000 down payment. The vehicle is in excellent condition. She is maintaining it well. The vehicle is insured.

Eight Mile's representative testified that the Mazda was sold 10 months ago on a 36 month contract. The payments to Eight Mile were $267.20 per month at a 17.91% interest rate. Eight Mile does not voluntarily finance cars for longer than 36 months. The owner's policy is not to do so and the manager explained that this was because Eight Mile only sold used cars that depreciate every month and tend to break down. Eight Mile's ability to sell its auto loans to obtain cash for its operations depends, in part, on the term of the loans. The Eight Mile representative was aware of no lender who bought used car loans with a contract length of more than 36 months. However, Eight Mile has, on rare occasions, financed cars for longer than 3 years.

The Eight Mile representative testified that the life of a car depends upon how it is driven. Cars can last from 5-8 years depending on use. The longer a car is driven, the greater the risk of accident as well.

LAW

Eight Mile objects to the confirmation of NeFeesa Burroughs' plan on one ground--that the payments proposed by the debtor to Eight Mile are inappropriate due to the fact that Eight Mile will receive no payment for 12-13 months after the filing of the case. Eight Mile cites no particular Bankruptcy Code section or other theory as a basis for its objection.

In this district, payments under a chapter 13 plan are made first to debtor's attorney fees and the chapter 13 trustee's commission.[2] When a debtor's attorney fees have been paid, payment of

---

[2] The payment to the debtor's attorney and the chapter 13 trustee are expenses of administration pursuant to 11 U.S.C.§ 503(b)(1).

2

priority debts, secured debts, and unsecured debts commences.  An attorney fee of $1800 is the normal amount charged and allowed by this Court as the full amount paid to a debtor's counsel for a chapter 13 bankruptcy case, unless a fee application is filed and the Court approves additional compensation.  The speed with which the $1800 is paid to the debtor's attorney is dictated by how large the monthly plan payment is.  In other words, if the debtor has disposable income of $100 per month that is paid to the plan, then it will take more than 18 months (due to trustee's commission also being paid) to pay the attorney fee in full.  Secured, priority and unsecured creditors receive nothing until the attorney fee is paid.  If the debtor's payment is $600 per month, then the secured, priority and unsecured creditors begin receiving payments in the fourth month of the plan (or at confirmation if later).  Ms. Burroughs proposes to pay $165 per month to the trustee.[3]  Therefore, Eight Mile would not receive any money from the trustee for 12-13 months after the case is commenced.  During that time, the debtor will be driving the auto and it will be depreciating.

There are several provisions of the Bankruptcy Code and several other theories that creditors have employed in objections to confirmation that are similar to Eight Mile's.  Cases with similar factual situations have discussed § § 1325(a)(5), 1326(b)(1), the Fifth Amendment to the U.S. Constitution, and adequate protection.  The Court will address each issue in turn.

A.

Section 1325(a)(5) of the Bankruptcy Code provides that "the court shall confirm a plan if . . . with respect to each allowed secured claim . . .the plan provides that the holder of [the] claim retain the lien securing [the] claim. . . and . . .the value, as of the effective date of the plan, of

---

[3]The exact amount Ms. Burroughs will have to pay could be more than this amount due to her agreement to pay a higher collateral value at a higher interest rate, but the concept is the same.

3

Case 04-17244    Doc 11    Filed 03/22/05    Entered 03/22/05 09:08:04    Desc Main
Document      Page 3 of 9

property to be distributed under the plan on account of [the] claim is not less than the allowed amount of [the] claim." Does the Burroughs plan fulfill this requirement?

Several cases have held that failing to pay a secured creditor at least as much as the collateral depreciates that month means that the creditor does not "retain the lien securing" its allowed secured claim as required. *In re Cook*, 205 B.R. 437 (Bankr. N.D. Fla. 1997); *In re Johnson,* 63 B.R. 550 (Bankr. D. Colo. 1986). Other cases hold the opposite. *In re Harris*, 304 B.R. 754, 762 (Bankr. E.D.Mich. 2004); *In re Walters*, 203 B.R. 122 (Bankr. C.D.Ill.1996); *In re Dews*, 191 B.R. 86 (Bankr. E.D.Va. 1995). The *Walters* case stated:

> To satisfy the requirements of [1325(a)(5)(B)], debtor's plan need only provide that GMAC retain its lien and that GMAC be paid interest "over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the court or agreed upon by the parties." There is no requirement that a chapter 13 plan provide adequate protection to the holder of an allowed secured claim against whatever diminution in value may result to the property securing the allowed secured claim in which the lien is retained.
> *In re Walters*, 203 B.R. 124 (quoting from and relying upon 5 COLLIER ON BANKRUPTCY ¶ 1325.06[2], at 1325-49 (15th ed. 1996).

This Court, like the *Harris*, *Walters*, and *Dews* Courts, rejects the argument that "retaining the lien" incorporates the concept of retention of value of the lien. That is simply not what the plain language of § 1325(a)(5) says. *Harris*, 304 B.R. at 762.

> There is a difference between the value of a lien and the lien itself, just as there is a difference between the value of a motor vehicle and the vehicle itself. While the value of a lien varies with the value of the creditor's collateral, the existence of the lien itself does not. A lien in a vehicle, for example, is a lien in that tangible piece of personal property--the physical thing --regardless of what that physical thing is worth at any given time.
> *Id.*

4

B.

The next argument raised in similar cases is that § 1325(a)(6) is violated by a plan that does not pay a secured lien from the first month or very early months of the plan. The section states that, for a plan to be confirmable, a court must conclude that "the debtor will be able to make all payments under the plan and to comply with the plan." In other words, section 1325(a)(6) requires that the court find a plan is feasible. The *Cook* case stated:

> [S]ecured creditors should not be required to fund debtors' plans and pay debtors' attorney's fees, in effect, with the depreciation of their collateral. If the risk of non-payment of the debtors' attorney's fees under a plan is too great to justify taking the case if the secured creditors must be adequately protected, then that should tell the attorney something about the case.
> *Cook*, 205 B.R. at 444.

The *Brown* case, 319 B.R. 898 (Bankr. M.D. Ga. 2004), also denied confirmation of a loan that delayed payment to an auto lender for 12 months pursuant to § 1325(a)(6) stating:

> The Court is not omniscient, but 1325(a)(6) requires the Court to be realistic about how this case is likely to unfold. If [the creditor] were to seek stay relief post-confirmation in this case, the Court would likely be required to grant such relief. Even assuming [the creditor] . . . has some equity cushion, Debtor will not be allowed to propose a plan that withholds payments to [the creditor] for almost a year while Debtor continues to benefit from the use of [the creditor's] depreciating collateral and when the accumulation of preconfirmation payments does not amount to enough to pay attorney fees proposed for payment in full at confirmation. When one or more additional months of debtor payments are required to fully fund the attorney fees claim, the creditor secured by a depreciating asset such as the automobile in this case is likely to be irreparably harmed. If stay relief is granted, the chances of Debtor being able to make all payments under the plan are slim. Certainly, without reliable transportation, Debtor would more likely than not fail to complete his plan.
> *Brown*, 319 B.R. at 902.

The *Harris* case, in which the lender would not be paid for 6 months, held that a 6 month delay did not abuse § 1325(a)(6). "When a debtor's plan meets all of the requirements of § 1325(a), that

5

section requires the Court to confirm the plan. The Court has no discretion to impose any additional requirements for confirmation." *Harris*, 304 B.R. at 766. If the Court concludes that the plan is one in which the debtor will be able to make all of the payments, then the plan should be confirmed. There is no "guarantee" afforded to any creditors against the ever present risk that the plan might fail. The Court's determination, by a preponderance of the evidence, that the debtor is capable of completing the plan at the payment level set is all that § 1326(a)(6) requires. This Court agrees with the Harris court's reasoning. A finding of feasibility is enough to satisfy § 1326(a)(6).

C.

The third ground upon which the cases have found that a plan that delays payment to a secured creditor until after payment in full of attorney fees is the Fifth Amendment to the U.S. Constitution.[4] The creditor asserts that the confirmation of such a plan would result in an unconstitutional taking of the creditor's property for a public use and without just compensation. However, this argument is without merit. The case of *Chrysler Fin. Corp. v. Nolan*, 232 F.3d 528 (6th Cir. 2000), discussing the Fifth Amendment's relation to a different fact pattern, reasoned in a manner equally relevant here.

> Congress has explicit authority to allow and regulate bankruptcy. U.S. Const. Art. § 8, cl. 4. Every bankruptcy involves a "transfer" of private property from a creditor to a debtor, in the sense that a creditor is involuntarily deprived of a previously-vested, legally-enforceable debtor obligation to returned borrowed creditor property. However, mere reconciliation of debts among private entities does not normally constitute taking private property *for public use.* A bankruptcy court does not instigate specific transfers of property with the objective of bestowing direct or indirect benefits on the public that are unrelated to bankruptcy policy.
> *Nolan*, 232 F.3d at 534 n. 10.

---

[4]The Fifth Amendment provides, in part, that "nor shall private property be taken for public use, without just compensation." U.S. Constitution, amend. V.

This Court agrees with the *Nolan* case. The Fifth Amendment is not implicated by the debtor's plan. *See also Harris, supra.*

D.

Creditors have also argued, and this Court at the hearing incorrectly said, that this case dealt, at least in part, with an issue of adequate protection. However, adequate protection is a preconfirmation issue only. Once there has been confirmation of a chapter 11, 12, or 13 plan, there is no further adequate protection need. A plan confirmation determines that the treatment afforded to a creditor by a confirmation provides the ongoing protection needed by a creditor. *In re Johnson*, 63 B.R. 550, 553 (Bankr. D.Colo. 1986)(holding that "[s]ection 362, and the 'adequate protection' provisions of Section 362(d) are no longer applicable [postconfirmation]" and that "[i]nstead . . .the secured creditor's rights and interests are defined strictly by the provisions of the plan.").

E.

Having stated that this Court agrees most with the *Harris* case and its reasoning, and having concluded that a plan that delays payments to a secured creditor until after payment in full of the debtor's counsel's attorney fees is not per se unconfirmable, the Court cannot say that every plan, regardless of how long the secured creditor's payment is delayed, will be confirmable. The confirmability will depend upon the circumstances of each case. The Court will look at the length of the delay, the financial stability of the debtor, whether there is a wage order, what type of collateral is at issue and how quickly the collateral is depreciating, the debtor's payment record to date in the bankruptcy case and any prior bankruptcies, whether creditors have been offered any protection in the event of a default (e.g. automatic termination clauses), and similar factors.

7

Case 04-17244    Doc 11    Filed 03/22/05    Entered 03/22/05 09:08:04    Desc Main
Document    Page 7 of 9

The *Brown* case cited above talks about whether the creditor is being treated appropriately in a plan based upon postconfirmation relief from the stay criteria. This Court finds that the relief from the stay context is useful. In a postconfirmation situation in which payments are being made through the plan, the Court will grant relief from the stay if postpetition payments are in default and the debtor cannot get back on track. The debtor, in determining a fair treatment for the secured creditor, should look at giving the creditor every assurance that the plan will last until completion, or, if it does not, that the creditor can rapidly seize its collateral.

In this case, Ms. Burroughs owns a 5 year old car. The evidence was that it is in excellent condition, is being well maintained, and is fully insured. She has made all of her chapter 13 payments (2) as required to date. She has been at her place of employment for two years. Her schedules show no prior bankruptcies. Ms. Burroughs presented herself well and appeared to be fully "on top" of her situation. On the other hand, Eight Mile will receive no payments from September 2004 through September 2005 and the auto will be used during that time. The debtor has offered Eight Mile no wage order or automatic termination provision in the event of a debtor payment default or insurance default.

In a case like this in which the debtor is maintaining the collateral and making her plan payments as scheduled, but payments to the secured creditors are delayed for more than 12 months, the court concludes that either a wage order or a clause in the confirmation order that grants relief from the stay to the creditor upon a payment or insurance default, with the debtor having a 15 day opportunity to cure, would be sufficient to make the plan confirmable. This case is not like the situation in the *In re Johnson* case where payment was delayed for 45 months and confirmation was denied. *In re Johnson*, 63 B.R. 550 (Bankr. D. Colo. 1986). It is more like the cases of *In re Walters*,

203 B.R. 122 (Bankr. C.D.Ill. 1996) (where payment was delayed for 10 months) and *In re Dews*, 191 B.R. 86 (Bankr. E.D. Va. 1995) (where payment was delayed for 8 months postconfirmation). In the *Walters* and *Dews* cases, the Courts confirmed the plans. There are cases in which a delay in payment will make a plan nonconfirmable. However, these facts do not add up to a nonconfirmable plan.

On a practical level, this position is justified as well. If the chapter 13 Trustee had to set up numerous different payment schemes in thousands of cases, the system would not function as efficiently or effectively. Providing other protections, that do not affect the trustee's normal payment structure, will be better for the system when appropriate.

THEREFORE IT IS ORDERED that the objection of Eight Mile Auto Sales, Inc. to the confirmation of the plan of NaFeesa Burroughs is SUSTAINED unless the debtor does the following:

1. Modifies her plan to provide Eight Mile Auto Sales with a collateral value of $6287.50 at 8.25%; and

2. Agrees to provide either a wage order or an automatic termination provision to Eight Mile Auto Sales, Inc. The automatic termination provision must provide that the automatic stay lifts as to Eight Mile Auto Sales in the event the debtor defaults on her plan payments or allows her insurance coverage to lapse, if the debtor has been given by Eight Mile Auto Sales, Inc., a 15-day notice and opportunity to cure.

Dated: March 22, 2005

MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE